UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
Greensboro Division

JONATHAN NELMS,

    Plaintiff,

v().                                                    Civil Action No. _____

EXPERIAN INFORMATION SOLUTIONS, INC

    Defendant.

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, Jonathan Nelms, by Counsel, and as for his Complaint against Experian Information Solutions, Inc., states as follows:

## PRELIMINARY STATEMENT

1. This is an action for statutory, actual, and punitive damages, costs, and attorney fees, brought pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681a–x ("FCRA").

2. Before the enactment of the FCRA, inaccurate and misleading information was identified as "the most serious problem in the credit reporting industry." 115 Cong. Rec. 2411 (Jan. 31, 1969). With this problem in mind, Congress enacted the FCRA in 1970 to ensure the "confidentiality, accuracy, relevancy, and proper utilization" of credit reports. 15 U.S.C. § 1681(b). This section imposes a high, and often disregarded, standard on consumer reporting agencies. *See, e.g., Burke v. Experian Info. Sols., Inc.*, 2011 WL 1085874, at \*4 (E.D. Va. Mar. 18, 2011) (breaking down the requirements of § 1681e(b), and explaining that "'assure' means 'to make sure or certain: put beyond all doubt,'" "'[m]aximum' means the 'greatest in quantity or highest degree attainable[,]' and 'possible' means something 'falling within the bounds of what

may be done, occur or be conceived.'" (quoting *Webster's Third New International Dictionary* 133, 1396, 1771 (1993)).

3. To accomplish Congress' goals, the FCRA contains a variety of requirements to protect consumers, including § 1681e(b), one of the cornerstone provisions of the FCRA. Whenever a consumer reporting agency prepares a consumer report, § 1681e(b) requires the CRA to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates. 15 U.S.C. § 1681e(b).

4. Experian Information Solutions, Inc. is a consumer credit reporting agency and charged with using reasonable procedures designed to ensure the maximum possible accuracy of the information they report. Experian fell short of that duty here, as it reported Plaintiff as deceased when he is not.

5. The Consumer Financial Protection Bureau has noted, "experience indicates that [CRAs] lack incentives and under-invest in accuracy." Consumer Fin. Prot. Bureau, Supervisory Highlights Consumer Reporting Special Edition 21 (Issue 14, March 2, 2017).

6. Statutes like the FCRA therefore provide consumers with the only mechanism by which they can force CRAs to report accurate information about them.

## JURISDICTION & VENUE

7. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, 15 U.S.C. § 1681p.

8. Venue is proper in this District as Plaintiff is a resident in this District, the violations described in this Complaint occurred in this District, and the Defendant transacts business within this District.

## PARTIES

9. The Plaintiff is a natural person residing in the State of North Carolina and at all times relevant to the Complaint was a "consumer" as defined by 15 U.S.C. § 1681a(c).

10. Defendant is a foreign corporation authorized to do business in North Carolina through its registered offices in Raleigh, North Carolina.

11. Experian is a "consumer reporting agencies" as defined by 15 U.S.C. § 1681a(f).

## FACTUAL ALLEGATIONS

### *Section 1681e(b) of The Fair Credit Reporting Act Require Substantive Investigations Of Information CRAs Report*

12. "Congress enacted FCRA in 1970 out of concerns about abuses in the consumer reporting industry. *See* S. Rep. No. 91–517, at 3 (1969); 116 Cong. Rec. 35941 (1970) (statement of Sen. Proxmire); *id.* at 36570 (statement of Rep. Sullivan); . . . . In enacting FCRA Congress adopted a variety of measures designed to insure that agencies report accurate information." *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 414–15 (4th Cir. 2001).

13. "In recognition of the critical role that CRAs play in the credit markets and the serious consequences borne by consumers because of inaccurate information disseminated in consumer credit reports prepared by CRAs, Congress placed on a CRA what can only be described as very high legal duties of care, set forth . . . in 15 U.S.C. §§ 1681e(b), 1681i(a)(1)(A), and 1681i(a)(3)(A)." *Burke v. Experian Info. Sols., Inc.*, No. 1:10-cv-1064 AJT/TRJ, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011).

14. One of these measures, 15 U.S.C. § 1681e(b), "deal[s] with the procedures consumer reporting agencies must follow when collecting and transmitting information. Congress also gave individuals the right to sue reporting agencies for violations of FCRA. *Id.* Section 1681e(b) sets forth the CRAs' overall duly:

> (b) Accuracy of report. Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

*Burke v. Experian Info. Sols., Inc.*, No. 1:10-cv-1064 AJT/TRJ, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011).

15. Further, as Defendant is aware, even though the term "investigation" is not used in § 1681e(b), it is clear that Defendant has a duty to conduct a reasonable initial investigation pursuant to § 1681e(b) as well as § 1681i(a) and that this is "central" to the CRA's duties of care under that portion of the Act:

> This conclusion flows from the plain meaning of both [§1681e(b) and §1681i(a)]. For example, Section 1681e(b) requires (1) "reasonable procedures" that (2) "assure" (3) "maximum possible accuracy." To "assure" means "to make sure or certain: put beyond all doubt." *Webster's Third New International Dictionary* 133 (1993). "Maximum" means the "greatest in quantity or highest degree attainable" and "possible" means something "falling within the bounds of what may be done, occur or be conceived . . . ." *Id.* at 1396, 1771. It is difficult to imagine how "maximum possible accuracy" could be guaranteed without an adequate investigation. Likewise, Section 1681i(a)(1)(A) requires a "reinvestigation," necessarily implying that an "investigation" was required to have been performed in the first instance.

*Burke*, 2011 WL 1085874, at *4.

### *Plaintiff Learns Experian Is Reporting Him As Deceased*

16. On around October, 2021, Plaintiff applied for a loan to purchase a vehicle with Burlington Kia. Plaintiff was denied the opportunity to purchase the vehicle. During the application process, Burlington Kia accessed Plaintiff's credit report with Experian through a software program and was advised by Experian that the Plaintiff "was deceased."

17. Plaintiff is not deceased.

18. A "hard inquiry" in Plaintiff's Experian credit file indicates access to Plaintiff's credit file by Burlington Kia.

19. Experian knew that Plaintiff was not deceased, and has first-hand knowledge of that fact because of recent events involving it and Plaintiff.

20. Plaintiff has spent the last two years disputing inaccurate information within his credit file with Experian and ultimately filed a lawsuit, ending in a confidential settlement less than 90 days ago, and is now once again having to endure substantial hardship because of Defendant's failure to report accurate information within his credit file.

21. Defendant knew that Plaintiff is alive because of the prior litigation history with Plaintiff.

22. Defendant also knows Plaintiff is alive because of other information in his credit file, including recent payment histories from his creditors showing that he continues to timely pay his bills.

23. Only the living typically pay bills.

24. Defendant has been sued thousands of times in federal court by consumers alleging that it violated the FCRA by inaccurately reporting information without following reasonable procedures to assure that the information was maximally accurate.

25. Plaintiff is one of those individuals, and Experian knows he is alive because they just settled a lawsuit over Experian's handling of Plaintiff's credit information and disputes of inaccurate information Experian was reporting about him.

26. Just in the last 12 months alone, Experian has been sued on such consumer complaints over 1,500 times.

27. The Plaintiff has been deterred from securing lines of credit that he should have otherwise qualified for due to the inaccurate and derogatory account that the Defendants continued to include in his consumer reports.

28. The Plaintiff was denied the purchase of a vehicle and is now without any transportation, which he requires due to a chronic illness, because of the negative impact of reporting him as "deceased".

29. As a result of the Defendants' conduct, actions, and inaction, the Plaintiff suffered damages to include, but not limited to, damage to his credit rating, increased costs and interest, aggravation, emotional stress, inconvenience, embarrassment, and frustration.

30. The FCRA allows for a remedy for a "willful" violation. A willful act or violation includes, "not only knowing violations of [the statute], but reckless ones as well." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, at 57 (2007). A "reckless" action includes conduct whereby "the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69.

31. Proof of willfulness includes, for example, "evidence that other consumers have lodged complaints similar to" the one made by the Plaintiff" and a failure to make the correction right away. *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 418 (4th Cir. 2001); *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 151 (4th Cir. 2008). Further, a lack of any internal procedures to anticipate or prevent inaccuracy is willful. *Daugherty v. Ocwen Loan Servicing, LLC*, 701 F. App'x 246, 249–50 (4th Cir. 2017).

32. As detailed above, the FCRA section at issue here, and informative guidance, have been around now for over 50 years. The FCRA's caution of Defendant's "grave responsibilities" to ensure accuracy has not changed.

33. The FCRA requires that Defendant must follow procedures which assure that the reports it sells meet the standard of "maximum possible accuracy." 15 U.S.C. § 1681e(b).

34. Experian does not request or require a death certificate or any other proof from any data source which advises that a consumer is "deceased" showing that the consumer is, in fact, deceased before placing a "deceased" notation on that consumer's report.

35. Experian does not independently verify with any source that a consumer is, in fact, deceased before placing a "deceased" notation on that consumer's report.

36. Experian employs no procedures at all which assure that a consumer with a "deceased" mark on his report is, in fact, deceased before placing the "deceased" mark on that consumer's report and selling that report.

37. Such a policy is unreasonable for a number of reasons, not the least of which that Experian nearly always possesses other information – such as that the consumer is paying his bills or creditors are accessing the consumer's information at Experian for purposes of making a present decision about granting the consumer credit – showing that the consumer is indeed alive.

38. Even in instances where other data on the fact of the consumer's report indicates that he is not deceased, Experian employs no procedures which assure that a consumer with a "deceased" notation on his report is, in fact, deceased before placing the "deceased" mark on that consumer's report.

39. Once a "deceased" mark is placed on a consumer's report, Experian will not calculate and will not provide a credit score for that consumer.

40. Defendant knows that living consumers are turned down for credit specifically because Defendant is reporting them as "deceased".

41. Experian further knows that reporting a consumer as deceased is the most-harmful notation that can be attached to one's credit. There is no more derogatory notation—not bankruptcy, foreclosure, or repossession—than reporting a consumer as deceased.

42. Defendant is therefore aware that reporting a consumer as deceased is devastating to the consumer because it effectively halts the consumer's ability to engage in the credit market. Virtually all creditors view the deceased moniker as an indicator of fraud and, after seeing it attached to the file of someone who applies for credit, will refuse to grant credit to that customer.

43. Defendant has been on notice for years through consumer disputes and lawsuits that living consumers are turned down for credit specifically because Defendant is reporting them as "deceased" and without a credit score.

44. Experian has received and documented thousands of disputes from consumers complaining that their Experian credit reports have them erroneously marked as "deceased".

45. Experian knows that thousands of consumers are erroneously marked as "deceased" on their Experian credit reports via an erroneous furnishing of the "X" code, but said consumers are not on the Death Master File and are in fact, alive.

46. Nevertheless, Experian employs no procedures which assure that a consumer marked as "deceased" on Experian's reports are, in fact, deceased.

47. Defendant also does not employ any procedures to limit or stop the furnishing of reports to third parties for consumers which it has marked as "deceased" under any circumstances.

48. At all times pertinent hereto, Experian was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of Experian.

49. At all times pertinent hereto, the conduct of Experian as well as that of its agents, servants, and/or employees, was intentional, willful, reckless, and in grossly negligent disregard for federal law and the rights of the Plaintiff.

50. At all times relevant to this Complaint, Defendant's conduct was willful and carried out in reckless disregard for consumers' rights under the FCRA. By example only and without limitation, Defendant's conduct was willful because it ran a risk of harm that was known or so obvious it should have been known by failing to implement any procedure to identify and correct these common errors prior to furnishing reports.

51. Experian's conduct was likewise willful because it indiscriminately noted Plaintiff as deceased when it knew from its litigation and Plaintiff's own credit history that he is alive.

52. Defendants' procedures imposed on the Plaintiff and similarly situated consumers an unjustifiably and unreasonable risk of harm that could have been mitigated or avoided with just modest imposition.

## COUNT ONE: VIOLATION OF FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681e(b)

53. Plaintiff repeats the allegations in the foregoing paragraphs as though fully set forth herein.

54. Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports they furnished regarding Plaintiff. Despite Experian knowing or at least having reason to know Plaintiff was alive, it published his credit report to creditors indicating Plaintiff was deceased.

55. As a result of Defendant's conduct, Plaintiff suffered particularized and concrete injuries, including being robbed of his congressionally mandated right to accurate and complete credit reporting under the FCRA.

56. Experian's conduct, action and inaction were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant

to 15 U.S.C. §1681n.  In the alternative, it was negligent entitling Plaintiff to recover actual damages under 15 U.S.C. §1681o.

57.  Plaintiff is further entitled to recover his costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff demands judgment for actual, statutory, and punitive damages against the Defendants, in addition to attorney fees and costs; pre and post-judgment interest at the legal rate; injunctive and declaratory relief; and any other relief the Court deems just, equitable, and proper.

**The Plaintiff demands a trial by jury.**

Respectfully submitted,

**Jonathan Nelms**

By_____/s/_____
Leonard A. Bennett, Esq.,  VSB #37523
Craig Marchiando, Esq., VSB #89736
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd., Ste. 1-A
Newport News, VA  23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email:  lenbennett@clalegal.com
Email:  craig@clalegal.com

*Counsel for Plaintiff*